

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
September 02, 2022
_____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \* \* \* \*

|  |  |
|---|---|
| In re:<br><br>PATTI JO BARNES,<br><br><br>Debtor. | Case No.: 22-10156-abl<br>Chapter 13<br><br>Hearing Dates<br>DATE:  July 11, 2022<br>TIME:   2:30 p.m.<br><br>DATE: August 11, 2022<br>TIME:  11:00 a.m. |

## MEMORANDUM DECISION ON OBJECTIONS TO PROOFS OF CLAIM 3 AND 5

On July 11, 2022, the court held a hearing on the debtor's objections to Wells Fargo Bank, N.A.'s Proofs of Claim No. 3 (ECF No. 25) and No. 5 (ECF No. 27).  David Krieger appeared on behalf of the debtor; no other appearances were made.  The court heard argument from Mr. Krieger at the hearing and took the matters under advisement pending the Ninth Circuit Bankruptcy Appellate Panel's (BAP) decision on the issue in *In re Myers*, 21-11376-nmc. On July 19, 2022, the BAP issued its decision in the *Myers* appeal.[1] *Myers v. LVNV Funding, LLC (In re Myers),* 2022 WL 3012567 (B.A.P. 9th Cir. July 19, 2022).

In light of the *Myers* decision, the undersigned set a status hearing on these claim objections, and others raising similar issues, for August 11, 2022 (ECF No. 63).  Mr. Krieger

_____
[1] The creditor has appealed this decision to the Ninth Circuit, Case No. 22-60037.

1

appeared; Wells Fargo Bank, N.A. (Wells Fargo) did not.  During the status hearing, counsel and

the court discussed the impact of the *Myers* decision and the remaining issues.  The Wells Fargo

claim objections remain unopposed.

      Notwithstanding the lack of opposition, the court cannot sustain the claim objections as

the debtor does not dispute the debts owed to the claimant.  Barnes filed her schedules and

statements together with her petition.  In her Schedule E/F, "Creditors Who Have Unsecured

Claims," she listed an undisputed debt owed to Wells Fargo Bank N.A. in the amount of

$2,160.00 related to an account ending in 6843, and another undisputed debt owed to Wells

Fargo Jewelry Advantage in the amount of $3,385.00 related to an account ending in 3425. *See*

ECF No. 1, pp. 38-39.  Wells Fargo Bank, N.A. timely filed two claims in the bankruptcy case.

Claim No. 3-1 lists Wells Fargo Bank, N.A. as the creditor owed $2,160.82 on an account

number ending with 6843.  Claim No. 5-1 lists Wells Fargo Bank, N.A as the creditor owed

$3,385.76 on an account number ending with 3425.  The differences in the amounts between the

schedules and the claims are de minimis.  The court considers the amounts to be the same.

Similarly, the court finds no material difference between Wells Fargo Bank, N.A. and Wells

Fargo Jewelry Advantage for purposes of Claim No. 5 given the identity of the accounts and

amounts owed.  Thus, the amounts and account numbers listed in Claim Nos. 3 and 5 are

identical to the amounts and account numbers listed by the debtor in her schedules.

      Wells Fargo also complied with the requirements of Fed. R. Bankr. P. 3001(c)(3)(A).  As

required, it attached the appropriate account summary identifying the information required under

the Rule.  Under Fed. R. Bankr. P. 3001(f), this established the prima facie validity of Claim Nos.

3 and 5.

Despite listing the Wells Fargo claims as undisputed, the debtor objects because it has failed to produce authenticated evidence of the debtor's liability and the amount of the claims. Though Wells Fargo has met the authentication requirements for credit card debt set out in Fed. R. Bankr. P. 3001(c)(3)(A), Barnes contends that it was required to comply with the evidentiary requirements found in Nevada Revised Statutes (NRS) 97A.160(1) applicable in an action to collect a debt owed to an issuer.[2]  The statute requires a credit card issuer to establish the debtor's contractual liability and the amount of that debt. NRS 97A.160(1)(a) provides that the issuer "*may* establish that the cardholder is contractually liable for the debt owed by submitting the written application for a credit card account submitted to the issuer by the cardholder or evidence that the cardholder incurred charges on the account and made payments thereon." (Emphasis added).  NRS 97A.160(1)(b) provides that "[t]he amount owed *may* be established by photocopies of: (1) [t]he periodic billing statements provided by the issuer; or (2)  [i]nformation stored by the issuer on a computer, microfilm, microfiche or optical disc which indicate the amount of the debt owed." (Emphasis added).  Subsection (2) then requires that the content of such records must be authenticated either under the procedures set forth in NRS 52.450 – 52.480, or by an appropriate affidavit. NRS 97A.160(2).

In this instance, Wells Fargo did not institute an action against Barnes to collect its debt. Rather, Barnes filed her bankruptcy, listing her two undisputed, unsecured debts owed to Wells Fargo.  Wells Fargo then filed its proofs of claim in compliance with Rule 3001(c)(3) and attached the required account summary.  The relevant committee notes for Rule 3001 explain the significance of this subsection:

> Subdivision (c) is further amended to add paragraph (3). Except with
> respect to claims secured by a security interest in the debtor's real

---

[2]  An issuer "means a financial institution, or an authorized agent of a financial institution, that issues a credit card." NRS 97A.100.

3

property (such as a home equity line of credit), paragraph (3) specifies information that must be provided in support of a claim based on an open-end or revolving consumer credit agreement (such as an agreement underlying the issuance of a credit card). Because a claim of this type may have been sold one or more times prior to the debtor's bankruptcy, the debtor may not recognize the name of the person filing the proof of claim. Disclosure of the information required by paragraph (3) will assist the debtor in associating the claim with a known account. It will also provide a basis for assessing the timeliness of the claim. The date, if any, on which the account was charged to profit and loss ("charge-off" date) under subparagraph (A)(v) should be determined in accordance with applicable standards for the classification and account management of consumer credit. A proof of claim executed and filed in accordance with subparagraph (A), as well as the applicable provisions of subdivisions (a), (b), (c)(2), and (e), constitutes prima facie evidence of the validity and amount of the claim under subdivision (f).

To the extent that paragraph (3) applies to a claim, paragraph (1) of subdivision (c) is not applicable. A party in interest, however, may obtain the writing on which an open-end or revolving consumer credit claim is based by requesting in writing that documentation from the holder of the claim. The holder of the claim must provide the documentation within 30 days after the request is sent. The court, for cause, may extend or reduce that time period under Rule 9006.

Fed. R. Bankr. P. 3001, Advisory Committee Note (2012).

Consistent with the above explanation of Rule 3001(c)(3), the debtor's counsel sent letters to Wells Fargo under Rule 3001(c)(3)(B), requesting the underlying documents supporting its claims. The letters were directed at the requirements of NRS 97A.160(1)(a), misstating the permissive nature of the statute: "NRS 97A.160(1) discusses the records *required* to collect a credit card debt, the evidence *required* to establish liability and amount of the debt, and *mandatory* authentication of records." ECF No. 25-1 at 2 (emphases added). It then concluded:

Your claim does not provide proper authentication pursuant to NRS 97A.160, nor (if applicable) have you filed a copy of the writing or the circumstances of the loss as required pursuant to FRBP 3001.

4

> Accordingly, the Debtor hereby requests you supplement your
> claim to provide the above information (1-3 above) to authenticate
> the POC; or withdraw the POC.

*Id.* at 3.

Barnes filed her claim objections after Wells Fargo failed to respond to the letters. She

seeks to disallow the claims for failure to prove the debtor's liability and the amount of that debt

with properly authenticated evidence under NRS 97A.160.  Wells Fargo failed to respond to the

claim objections as well.  Citing *Moore v. Am. Express Bank, FSB (In re Moore)*, 2016 WL

1177845 (Bankr. M.D. Pa. Mar. 22, 2016), the debtor argues the creditor is no longer entitled to

the presumption of prima facie validity provided by Rule 3001(f).[3]

Recently, the BAP addressed the application of NRS 97A.160 within the context of a

bankruptcy claim objection in *Myers.*  There, the debtors objected to a claim filed by the

purchaser of credit card claims.  The creditor attached the account summary required by Rule

3001(c)(3)(A) and was entitled to the presumption of prima facie validity under Rule 3001(f).

As in this instance, the debtors sent a letter requesting additional information under Rule

3001(c)(3)(B).  In response, the creditor provided five unauthenticated account statements and a

copy of the terms and conditions of the credit card agreement.  The creditor also amended its

proof of claim, but only included additional documentation related to its standing to enforce the

claim.  *In re Myers,* 2022 WL 3012567 at *1.

---

[3] In *Moore,* the debtor disputed his personal liability for a corporate credit card.  As part of its response, the creditor pointed out that the debtor "had listed the debts as undisputed on his schedules and acknowledged his liability on the debts as a 'co-debtor.'" *Id.* at *1.  The bankruptcy court reconsidered its prior order disallowing the claims based on this argument and other evidence.  But the debtor specifically denied his personal liability for the corporate debts and the evidence presented during the contested claim objections failed to establish his personal liability for all of the charges.  The debtor's specific denial of personal liability for the claim differentiates *Moore* from the instant case.

The debtors objected to the claim as deficient under NRS 97A.160 for failing to provide the necessary proof of liability and the amount of debt by authenticated evidence.  The creditor argued that the objection did not overcome the presumption of validity.

Because the claim was presumptively valid, the BAP recognized that the burden shifted to the debtors to negate the prima facie validity of the claim.  "Alternatively, they had the burden to show that the claim should be disallowed on one of the grounds set forth in § 502." *Id.* at *2. (citing *Campbell v. Verizon Wireless S-CA (In re Campbell)*, 336 B.R. 430, 435-36 (B.A.P. 9th Cir. 2005)).  The BAP agreed with the debtor that the creditor's claim was "inadequate under Nevada law because LVNV did not produce either an authenticated written credit card application or authenticated evidence that Debtors incurred charges on the account and made payments thereon." *Id*. at *3.  Though entitled to prima facie validity under Rule 3001(f), the creditor failed to "directly address the real issue, which is the enforceability of the claim under Nevada law." *Id*. at *4.

The creditor argued that the debtors had failed to controvert their liability. *Id.*  But the debtors in *Myers* had not admitted their liability in their schedules. Instead, the debtors had marked the credit card debt as disputed. *Id*. at *1.  The BAP read NRS 97A.165 and NRS 97A.160 to require that the purchaser produce evidence of the liability and the amount of the debt.  Even then, the BAP did not hold that the claim was disallowed.  Rather, it vacated the claim objection order and remanded the matter for further proceedings.

Barnes' claim objections differ from the objection in *Myers* in two material aspects. First, she has admitted the debt in her schedules.  She has not amended her schedules or presented any evidence to dispute the debts.  Rather, she sought to require the creditor to produce documents for debts that she has acknowledged in her sworn schedules.  Instead, she maintains

6

that the creditor has failed to prove its debt under Nevada law and thus Claim Nos. 3 and 5 must be disallowed under 11 U.S.C. § 502(b)(1).

This appears to be a restrictive reading of the requirements of NRS. 97A.160. Subsection (1) recognizes how a creditor "may" establish the debtor's liability and the amount of the credit card debt. Barnes reads the word "may" out of these subsections and argues that: "a claim arising under a credit card account is enforceable only upon an authenticated 'written application for a credit card account submitted to the issuer by the cardholder,' or authenticated evidence that the cardholder ran charges on the account and paid for those charges. NRS 97A.160(1)(a)." ECF No. 25 at 3. This is an improper construction of the statute. The use of the word "may" indicates that the means to prove liability and the amount of debt under NRS 97A.160 are permissive and inclusive rather than mandatory and exclusive. *See State v. Am. Bankers Ins. Co.*, 802 P.2d 1276, 1278 (Nev. 1990) ("In construing statutes, 'shall' is presumptively mandatory and 'may' is construed as permissive unless legislative intent demands another construction.").

It is absurd to suggest that under this statutory rubric a debtor's admission of liability and amount owed is not an acceptable alternative means of proving the debtor's liability for credit card debt.[4] "Statements made in bankruptcy schedules are executed under penalty of perjury and, when offered against the debtor, 'are eligible for treatment as [evidentiary] admissions.'"

---

[4] The bankruptcy court in *In re Rehman*, 479 B.R. 238 (Bankr. D. Mass. 2012) discussed instances in which it overruled unopposed claim objections. That decision echoes many of the court's concerns in this instance. It also noted that "[a] critical factor in reaching the decision in previous cases to overrule a claim objection to which the creditor has not filed an opposition has been the debtor's scheduling as undisputed the same claim thereby subjecting the debtor to the application of the doctrine of judicial estoppel so as to negate the objection." *Id*. at 244. Similarly, the court stated "Debtors are expected to have a basic knowledge of their liabilities and to disclose them truthfully and accurately on the schedules accompanying their bankruptcy petitions. Indeed, a debtor who fails to maintain records from which her financial condition or business transactions may be ascertained is not entitled to a discharge. *See, e.g.,* Bankruptcy Code § 727(a)(3)." *Id.* at 245. *See also In re MacFarland,* 462 B.R. 857, 880–81 (Bankr. S.D. Fla. 2011) ("If there is no substantive objection to the claim, the creditor should not be required to provide further documentation because it serves no purpose other than to decrease the likelihood that a valid claim against the estate will be disallowed on specious grounds. (citation omitted) The instant cases present objections to claims for debts which were scheduled in amounts substantially identical to (or greater than) the claimed amounts. All of the relevant debts were scheduled as neither contingent, nor unliquidated, nor disputed.").

*Suter v. Goedert*, 396 B.R. 535, 541 (D. Nev. 2008) (quoting *In re Bohrer*, 266 B.R. 200, 201 (Bankr. C.D. Cal. 2001)); *Campbell*, 336 B.R. at 436 ("[W]hen a debtor objects to a creditor's proof of claim that does not conform with Rule 3001(c) by including copies of the documentation on which it is based, the bankruptcy court should resolve the issues by reference to the usual burdens of proof associated with claims litigation.  In doing so, the bankruptcy court may properly consider as admissions or evidence any information contained in debtor's bankruptcy schedules….").  Barnes has never refuted her liability to Wells Fargo for the amounts stated in her schedules.  There being no dispute as to her liability to Wells Fargo it is unclear why any objection was filed.

Bankruptcy reverses the order of events in a traditional collection action commenced by a complaint.  In bankruptcy, the debtor must identify her assets and *liabilities* to commence a bankruptcy. *See* 11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr. P. 1007(b)(1)(A).  She must do so under oath. *See* Fed. R. Bankr. P. Rule 1008.  The debtor's signature on her petition certifies "that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*" that it is not being presented for any improper purpose and the factual contentions have evidentiary support.  Fed. R. Bankr. P. 9011(b)(1) and (3) (emphasis added).  This is not an idle obligation.  "A debtor may not adopt a cavalier attitude toward … the accuracy of his schedules by arguing that they are not precise and correct." *In re Bohrer*, 266 B.R. at 201. Debtors are responsible for their debts.  They have means available prior to filing their bankruptcy to ascertain their liabilities and satisfy themselves as to the amount of their liabilities.  When they are filed, the court and creditors are entitled to rely upon the representations made in those schedules. *See* 11 U.S.C. §§ 727(a)(3) and (4).  The court

concludes that the debtor's admissions in her schedules established her liability and the amount of her debt without resort to the requirements of NRS 97A.160(1) and (2) respectively.

Wells Fargo is also materially different than the creditor in *Myers* because it is an issuer rather than a credit card purchaser subject to the additional provisions of NRS 97A.165. Subsection (2) defines a purchaser of credit card debt to be "a person, other than a financial institution, that purchases any outstanding credit card debt." NRS 97A.165(2).  Credit card purchasers, such as the creditor in *Myers,* must provide certain information regarding the issuer and the date of default in any complaint filed to collect credit card debt. NRS 97A.165(1)(b)(1). More importantly in this instance, credit card purchasers are not entitled to any judgment, including default judgment, unless they meet "the standards of proof set forth in subsections 1 and 2 of NRS 97A.160." NRS 97A.165(1)(b)(2).

The significance of NRS 97A.165 is that Nevada statutorily requires credit card purchasers to provide evidence supporting a debtor's liability and the amount of the debt to obtain a judgment even if the complaint is not controverted.  This requirement does not apply to credit card issuers seeking a judgment. This statutory dichotomy between issuers and purchasers is significant as there is no proscription against issuers obtaining default judgment against a debtor.  The allegations of a complaint will suffice to establish a debtor's liability to a credit card issuer; specific evidence is not necessary if the complaint is not controverted.  This distinction further indicates that a debtor's *admission* of her credit card debt, at least a debt owed to the issuer, is sufficient to support liability in any action brought in Nevada.

As part of its account statement attached to its proofs of claim, Wells Fargo stated that it did not purchase the account.  This establishes Wells Fargo as the issuer of the credit card. Barnes has not argued otherwise.  Accordingly, NRS 97A.165(1)(b)(2) does not apply.  To the

extent that Barnes' unanswered request for documents did negate the prima facie validity of Wells Fargo's claims, her schedules are sufficient, uncontradicted evidence of her liability in the amounts she has stated.

Wells Fargo has not helped its situation by failing to respond to the claim objections. But this does not entitle the debtor to relief that is otherwise inappropriate. Wells Fargo has attached the account summary to its claims, and Barnes' schedules are part of the record for which the court may take judicial notice. Fed. R. Evid. 201. Barnes attempts to disallow a claim she admits. While it is easy to say that Wells Fargo could have addressed this matter by simply providing the documents Barnes requested, it remains unclear why it was required to do so for debts she admitted. Ultimately, neither point is material. Barnes' objections under NRS 97A.160 fail based on the record before the court comprised of the claims, the attachments to them, and the debtor's Schedule E/F. The claims and attachments prove that Wells Fargo is a credit card issuer subject to NRS 97A.160. Barnes' admissions set forth in her schedules are sufficient evidence under Nevada law to prove liability and the amount of her debts.

Accordingly, the Objection to Wells Fargo Bank, N.A.'s Proof of Claim No. 3 (ECF No. 25) and Objection to Wells Fargo Bank, N.A.'s Proof of Claim No. 5 (ECF No. 27) must be overruled. The court shall enter a separate order overruling the claim objections.

\* \* \* \* \*

Copies sent via CM/ECF ELECTRONIC FILING.

Copies sent via BNC to:

WELLS FARGO BANK, N.A.
P.O. BOX 10438, MAC F8235-02F
DES MOINES, IA 50306-0438

WELLS FARGO BANK, N.A.
ATTN: EMILY A. ORTH, BANKRUPTCY SPECIALIST
P.O. BOX 10438
DES MOINES, IA 50306-043

WELLS FARGO BANK, N.A.
P.O. BOX 14487
DES MOINES, IA 50309

# # #